The Honorable the judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention for the court is now sitting. God save the United States and this Ms. Leaston, we're happy to hear you in the Evans case. May it please the court Jenny Leaston on behalf of the appellant William Evans. Your honors, the district court erred in applying two different sentencing enhancements in this case. The first arises under 2k2.b15 that is the four level enhancement for trafficking in firearms. Now this enhancement requires the government to prove two things. First, that Mr. Evans transferred two or more firearms to another person. Now that first prong is not in dispute here. The evidence showed that Mr. Evans smuggled six firearms out of the pawn shop where he worked and left them with his friend, a young man named Sharon Butts. So the dispute lies with the second prong which requires the government to prove either that Mr. Butts was a person whose possession would be unlawful and the government agrees on appeal that it cannot meet that burden here because Mr. Butts was not, he did not have a prior felony conviction. He didn't have a prior misdemeanor conviction of domestic violence. He didn't have, he wasn't on escape status. So the government agrees it can't meet its burden there. So the only way for the enhancement to apply is for the government had to show that when he left the firearms with Mr. Butts, Mr. Evans knew or had reason to believe that by doing so that would result in the transfer of those weapons to someone who would either possess the guns unlawfully or would use them in connection with some sort of unlawful activity. Now the problem for the government there, they couldn't show that Mr. Evans knew that that would happen because their own witness, Agent Larry Bear, testified under cross-examination that there was no that the two young men had any plans for those firearms, had any plans to dispose or use of those firearms unlawfully. So... Isn't the difficulty that you face that we're under a clearly erroneous standard as a factual matter? So as a factual matter, so this court sat in United States v. Duggar, which is cited in my brief, that this is a mixed question of law and fact and absolutely that the district court's factual findings are reviewed for clear error. Well, when you have language like had reason to believe that someone would use or dispose of the firearm unlawfully, that seems awfully factual. It does seem erroneous standard can certainly be met and this court has, this enhancement has been found to be inapplicable in several cases where the evidence, there is not substantial evidence in the record to support the district court's factual findings. And this court has, this court and no other court that I've been able to find, has ever upheld this enhancement where there is no evidence of criminal activity on the part of the recipient of the firearms. Because it's that sort of activity that places the person on... I don't think you actually have to have an instance that it's, it's a question of had reason to believe that someone intended to use or dispose of the firearm unlawfully. So that would be in the nature of a forecast. And here, Your Honor, the only thing the government was able to show was that Mr. Butts may have been a gang member. Can you just clarify for me what is your position on whether Butts is a gang member? So there was evidence to suggest that he was a gang member. However, he was not a validated gang member and I realized that in my brief I never really bothered to explain what that means, gang validation. We litigate this issue all the time in the past and I didn't bother to explain and so let me please take the opportunity now. To validate someone as a gang member, the North Carolina Department of Public Safety has a list of about 12 factors that it looks at and these are things like, have you ever admitted to being a gang member? Do you have a gang tattoo? Have you ever been arrested in connection with gang activity? Do you wear gang colors? Things like this. So there's a list of gang members and he's not on it? Yes. And it only requires two factors. It only requires two of those factors to validate someone as a gang member. So they could not put that together. In reading the PSR, it was a little unclear to me, did your client, did Mr. Evans say when he admitted to transferring the guns to Butts that Butts was a gang member? So I agree, Your Honor, that sentence in the PSR also gave me pause because to be clear, no. Mr. Evans didn't say, didn't identify Butts as a fellow gang member. That was something that the probation officer put in there. However, I agree with you that it wasn't specifically objected to and it's rather ambiguous the way that it's phrased. But at most you have gang membership, which we contend, Your Honor. Yes, Your Honor. That's not at most. It looks like there's almost a sort of celebratory atmosphere in which Evans is handing the thing over to Butts. And a district court could say, I mean, I think it's clear that Butts and Evans knew each other, that they had some prior relationship. And so you have to figure that Butts knew that Evans worked at the pawn shop. And there would be easily inferred by a fact finder that all arriving with six or three guns, somebody who's working at a pawn shop and has a criminal record of his own, is not in possession of those legally. And the most obvious lawful uses of guns, I suppose, are, as the district court pointed out, target practice or hunting or whatever. But when you have somebody who has a prior criminal record, who works at a pawn shop, who all of a sudden shows up with a prior acquaintance with either three or six guns, and then they start high-fiving each other. And you can say what you want about those pictures. But they are plenty revelatory. And if you're under a clearly erroneous standard of review, and I'm skeptical of all the attempts to turn factual matters into questions of law. They were just trying to take more and more sentencing authority from district judges. But I don't see how you get to a clearly erroneous reversal, given the way in which the guideline is. It seemed to me, looking at all the factors here, that yeah, the district court could legitimately say he had reason to believe that Butts was going to be using these firearms to no good end. So, Your Honor, several responses to that. So first, I don't think it's reasonable to infer that everyone in those photos and that Mr. Butts himself knew that Mr. Evans could not prohibit firearms. Having a criminal record and being prohibited from unlawfully possessing firearms is not a normal topic of conversation among friends. What is a normal topic of conversation among friends is where you work and what you do for a living. And the evidence showed that Mr. Evans worked at a pawn store, and one of his actual job duties was to transfer these firearms at the end of the day and lock them away. So for all these young men in the photos knew, including Mr. Butts, these were guns that Mr. Evans bought, perhaps with his employee discount, at the store. I'm sorry to interrupt, Chick, and I want to give you a chance to respond to anything you want to Judge Wilkinson. But isn't another factor that he started with six and three were found at crime scenes? Now, I understand the testimony. There was no testimony linking them directly with the defendants or accused at those crime scenes. But when you have, when you start with six alone, in and of itself, and three are found at crime scenes, combined with some of the other information, I'm struggling with how that doesn't meet the clearly, or how that meets the clearly erroneous standard. So several things, Judge Quattlebaum. First, I think actually where the guns ended up cuts against the district court's finding, because these guns were not found with any gang members. So none of the people that the guns were found with had any connection, there was no evidence there was any connection to gang activity, or that they were gang members. And they had absolutely no connection to Mr. Butts or Mr. Evans. So I think that actually cuts against, and I would also point out the 11th Circuit's decision in Askew, and the 3rd Circuit's decision in Cercerello. Those guns, just like here, and we're talking about far more guns in both those cases, 22 in Askew, and 54 in Askew, and 22 in Cercerello. Those guns were also found in connection with criminal activity, and both the 3rd Circuit and the 11th. It's a combination of things. It seems to me that what you're asking the district judge to do is to adopt a posture of willful blindness to what you're seeing here. You know, you get multiple guns stolen, he pleaded guilty of stealing firearms, so there are multiple guns that we can take that as a fact. And he's stealing them, and he's not putting them in the hands of his dearly beloved ancient aunt to help her in an exercise of self-defense. He's putting them in the hands of someone who certainly looks like they have a pre-existing relationship, and yes, I know what you're going to do with this. I mean, it seems like the district court could say he carried them to a nefarious place. Those pictures are very revelatory. Now, he could have carried them to a contemporary, and you don't take any inference from that, but there's more than that here. So, Your Honor, I'm not asking this court to re-weigh anything. I'm simply saying that the evidence is equally capable of innocent possibilities. I would ask this court to follow the decision of Sir Cerello and ask you, both of which said that where you have so little evidence, basically, and it's equally capable of innocent explanation as it is guilty explanation, then really the evidence is an equipoise, and it means that the government has not met its burden. And that's what it's important to keep in mind. The government had to meet its burden here, and they simply failed to do so. You're assuming a conclusion when you say the evidence is an equipoise? So, there are perfectly innocent explanations for every piece of evidence here. The evidence showed that Mr. Evans took the firearms because for two things. He was using the guns to pose on social media, to look cool, to get with his friends, and everybody looks just like the cover of a rap album or a hip-hop album. It looks like every music video out there, these are young men who like to appear cool for purposes of social media. And he was also using them. He said on Facebook that he wanted to shoot the guns after he got off of work. Now, he couldn't do that at home because Mr. Evans lived at home with his parents, and unlike most of our clients, Mr. Evans actually came from a very middle-class background. Both his parents were professionals, and they certainly knew that he couldn't be around guns. So, he had to find a place where he could enjoy these guns, and that was with his friend, Mr. Butts, who had no felony convictions, who could lawfully possess guns. That was a great place to get together with their friends, pose with these pictures, and make these photos for purposes of social media. The fact, I've lost my train of thought. Can you help me? You mentioned, we talked earlier in response to Judge Harris's question about the gang evidence regarding Mr. Butts. Aside from the pre-sentencing report, was there other evidence in the record of his association with gangs? There was not, Your Honor. There was no evidence of any gang, actual gang activity. There was no evidence of any actual gang activity on the part of Mr. Evans or Mr. Butts. So, with respect to Mr. Butts, is it your position that the only thing in the record regarding his gang association, I'm not talking about validation, I'm talking about evidence related to it, is that pre-sentence report? Correct, Your Honor. Okay. So, what I think is particularly striking in this case, Your Honors, is when you think about the amount of access that the government had to evidence in this case, and how little they had to show for it at the end of the day. The record shows that they searched Mr. Evans' home, they searched his car, they went through his Facebook account, they searched through Mr. Butts' cell phone, they interrogated both young men. After doing all of that, they could really only come up with these photos. And you would think, now certainly Mr. Evans was not being shy about posting on social media about these guns. You would think that if they had plans for these guns, if they were planning to do something with them, there would be some evidence of that somewhere. And the government simply didn't meet its burden. It didn't come up with that evidence. I would also point out, Judge Quattlebaum, that six firearms is not a particularly large amount of firearms for personal use. I would point to this Court's decision in Larimore, in which the facts of that case showed that the defendant broke into a gun safe and stole six guns out of the homeowner's gun safe. There was no suggestion in that case that that was a, that that gun owner was a aficionado, or that was a particularly unusual number of guns. It's certainly not an unusual number of guns to have if you're- You're pointing to inferences that the district court might be able to draw in a sentencing argument, but the question is, was the district court obliged to draw them, or was the failure to draw the inferences that you wanted him to draw a clearly erroneous finding of fact? That, I think, is your most significant problem, is the standard of review, which matters greatly in these kind of things, because we often have facts from which two sets of inferences can be drawn. And the question is, is the inference that the district court drew clearly erroneous? And you can, you've got some rebuttal time, so why don't you address that now. Okay? Thank you, Your Honor. Ms. Fritz. Good morning. May it please the Court. Christine Fritz, on behalf of the United States, asking the Court to affirm the judgment of the district court. In this case, I think the conversation this panel had with defense counsel really strikes to the heart of this. This is a clear error standard of review. It's based on the court's assessment of the totality of the evidence, and I don't think on this record as a whole it's possible to say that it was implausible for the district court to have reached the conclusion that it did. I mean, the other thing that matters, right, is the burden of proof, and the burden of proof here is on the government. And so we have to meld that in with the standard of review, right? So did the government carry its burden of showing that it's more likely than not that this defendant had reason to believe that the person to whom he gave the guns, who is not validated as a gang member, who's never committed any gang-related offense, never committed any gun-related offense, no evidence of gang-related activity, was going to turn around and use those guns unlawfully. So where did the government, show me how the government met that burden. Okay. First, if I can, if you'll bear with me as I walk through it. The defendant was a convicted felon who was on probation at the time he stole these firearms. He started stealing the firearms approximately one month into his employment at this pawn shop. He steals six handguns, easily concealable guns, that were very valuable, thousands of dollars' worth of stolen merchandise. And we know that the three firearms that were unrecovered were valued at $2,710. So he stole valuable firearms, and then he promptly gave them to his friend, whom he identified as a fellow gang member. And one thing that I think is compelling is... You say he identified him as a fellow gang member. What we have in the record is the pre-sentence report. It indicates that the defendant identified Butts as a fellow gang member. I find that sentence so troublingly ambiguous, right? It says he identified Butts. And I think that I wouldn't just look at that sentence alone, because I think you also have to keep in mind that, I mean, the defendant is himself a validated gang member. And then you have these pictures where the defendant, a known validated gang member, is with someone that I would submit he identified as a fellow gang member, and they're throwing gang signs. I know, but my kids' yearbooks, I mean, the throwing of gang signs. Yes, but it's not just the throwing of gang signs. It's the throwing of gang signs while possessing thousands of dollars of stolen firearms. And doing so... Those pictures, I mean, if you look closely in the back of the closet, there's a Monopoly game. I mean, I think you can look at those pictures in different ways, and maybe that's your point, that you can look at it for a nefarious purpose, but you could also look at that as silly 19-year-olds that do stupid things that aren't criminal. I suppose that if it comes down to that there are two sets of reasonable inferences to be drawn, then the district court has to be given deference. If there are two reasonable sets of inferences to be drawn, how did the government meet its burden of proof? How did it show that one inference was the right one by a preponderance of the evidence? Well, I think that that goes, again, to the totality, and the judge is drawing the inference. And, I mean, I'm looking... It's not that it gets given to the judge. It's that the government has to prove by a preponderance of the evidence. So if there are two equal inferences, if it's 50-50, I don't see how the government has proven it. I think that that was a determination for the district court to make, whether it was more likely than not. And I'm mindful that the Supreme Court... Your view is that it's classic fact-finding, where you have two sets of inferences that validly could be drawn, and that's the whole reason you have a fact-finder, is to weigh those and decide which inference is the most plausible. I mean, I always thought that clearly erroneous reversals, particularly on a sentencing enhancement, were exceedingly rare. It's just... It would be highly unusual to do that, and particularly in light of his criminal history, where he worked, the number of guns that were stolen, the pictures which indicated a celebratory atmosphere of someone with whom he certainly had a prior relationship, the fact that some guns turned up at crime scenes. All of those things... I mean, the clearly erroneous standard presupposes that maybe we would not reach the same conclusion. Maybe we would. Maybe we would not. But there's a difference in our role and the role of the fact-finder applying a sentencing enhancement. And the more we try to script these things on appeal, the more we strip district judges of what their basic authority is in sentencing matters, and that's, I think, an unfortunate road to travel here. And Judge Wilkinson, I share your concern, and I think that your summary is entirely consistent with what the Supreme Court has said about this. In Anderson v. City of Bessemer City, the Court has said, if the district court's account of the evidence is plausible in light of the record views in its entirety, the Court of Appeals may not reverse, even though convinced, had it been sitting as the trier of fact, it would have weighed the evidence differently. And then the Supreme Court... The district courts could have said, you're asking me to show willful blindness or you're asking me to be naive to look at all this evidence and think that there was no reason to believe that the guns were going to be used or disposed of unlawfully. I mean, the district court could have said, you're asking me to be naive or to show willful blindness as to what is really afoot. And I absolutely agree with Your Honor. This is a judge who had been on the bench since 1980. He's familiar with what street games mean. And I want to add on to the evidence that I've already discussed in terms of why this inference is reasonable. I think it's very important that whenever Butts was asked about these firearms, he denied knowing anything about them. Ms. Fitch, let me switch gears slightly to the second enhancement and make sure I understand the position. I want to talk about subsection 2 first, that used in connection with another offense. Would the government's position on that prong of the second enhancement be essentially the same as the trafficking offense? Yes, it is. It's fairly similar. The evidence overlaps. So go back to the first prong. And is there any evidence in the record that Mr. Evans used these guns to intimidate or had them at close hand in order to intimidate or to meet the standard that Blunt, that this Court's decision in Blunt seems to require? Well, I think that there are two cases that are relevant. Obviously Blunt, and then we have the amendment, and we have Larimore, which I acknowledge is an unpublished opinion. But what's important is that you basically have to have Larimore control, or maybe you can say interpret, and number one, it's unpublished. But if Blunt is followed by itself, let's just assume that. Let's put Larimore to the side for a second. In terms of what Blunt requires, is there any evidence in the record of that? So with respect to what Blunt requires, I think that the amendment changed the calculus there. When it talked about if a defendant who during the course of a burglary finds and takes a firearm, even if he did not engage in any other conduct with the firearm during the course of the burglary, the enhancement is warranted. I don't understand. That's if it's a burglary. This was not a burglary. And so I don't understand how if a gun as an object of a felony is normally enough to meet the in connection with standard, then this 14B application note does no work at all. The only reason it's necessary to single out burglary as this sort of exception is because the general rule is that it's not enough that you just find a gun during the course of some other non-burglary offense if you don't use it in connection with the offense. Right? On your reading of the general rule under the in connection with prong, 14B does no work at all. Correct? No. That's not correct because I believe that it is possible to effectuate a stealing of items in a firearms without the risks that are inherent and presented in a burglary, which is the contemporaneous possession of the firearm during the offense. And I think that what Blunt was, what the amendment spoke to is they said under these circumstances, the enhancement is warranted because the presence has the potential for facilitating the burglary. I don't think it was warranted here, even though this wasn't a burglary, because it's enough that you took the gun during the course of the felony, then 14B is totally unnecessary. It would apply, obviously, your general rule would also apply in burglaries. The reason you need 14B is because that is not the general rule. So they make an exception for burglaries. I think what the sentencing commission did there is make clear that in that context. The context of burglaries. Yes. That it is the possession is sufficient. And I'm drawing by analogy. I appreciate this is not an unlawful entry. He had the right to be there. But it's similar because if he had been caught during the midst of his stealing, absolutely. So your view is 14B applies beyond burglaries, even though it says burglary. I think that the rationale underlying 14B, yes, it applies to other circumstances. And other courts have reached that conclusion. And I don't think that that conclusion is inconsistent with what this court. Are there other courts that have applied 14B outside the context of burglaries? They have applied the logic of it, which is the idea that it's the potential to facilitate. And if you look in Laramore, it goes through several circuits that have found that the firearm is a necessary component. And where it's not accidental or coincidental and is a necessary component of the offense, that's sufficient. In the Eighth Circuit case of Pazur, which is discussed in Laramore, that was a situation where the firearm was stolen. And the enhancement was applied there. In the Tenth Circuit opinion of Marufo, it was a tampering of evidence charge. And the evidence that was tampered with was the firearm. And the enhancement was applied there because necessarily the possession of the firearm facilitated and made easier that offense. And what I'm suggesting to this court is that in a context of an individual who is stealing firearms from a business and he possesses those firearms, the risk of being encountered, I'd suggest it's probably more than in a burglary because this is a store. You should go to the Sentencing Commission and tell them to amend 14B to include embezzlement from your place of work. Well, again, I think, and then also I would look to Laramore, which discussed Blunt and it explained, the majority opinion explained why its view of the facts was consistent with Blunt. And that the examples provided in Blunt were not exclusive because a firearm can have purposes beyond emboldening this. And in that particular case in Laramore, just as it was here, the firearm was itself a necessary component of the offense. You look at what the purpose of the Sentencing Commission, which derives its authority from Congress, was in passing these enhancements, is that there could be trafficking in firearms, but when the trafficking actually enhances the potential or increases the potential, that the trafficked firearms are going to be put to unlawful use, that merits a heightened penalty. That Congress is concerned here, or the Sentencing Commission is concerned here, about firearms trafficking and firearms being put in traffic not through lawful channels or there being something more than possession by a convicted felon. That's a classic 922G, but you don't have here mere possession by a convicted felon. You have trafficking that a district court, in its fact-finding capacity, could say, yes, this does enhance the potential for the unlawful use of firearms. And I'm not going to hide my eyes and blind myself to the fact of what I think is going on here. And I think the district court could say the defendant is asking him to be naive, to think that multiple guns could be placed in the hands of somebody who had this pre-existing relationship and that they could just be celebrating in a kind of teenager sort of fashion. Stealing valuable, dangerous merchandise. And Butts had to be aware of Evans, where he worked and what his past was. They weren't just casual acquaintances. That relationship went back some ways. And I think that's part of why, I think that Butts' knowledge is why when he was asked about the firearms, he lied. He said, I don't know anything about these firearms, because that shows his consciousness of guilt. Building on the relationship, you have the lying. It's preposterous that he didn't know anything about the firearms. Is that what he testified to in the sentencing here? I think that that's the fair inference from the evidence that was presented in the PSR and during the sentencing hearing. And I want to briefly add that it is unlawful for Evans to dispose of stolen firearms, period, if he knows or has reason to believe that they are stolen. So regardless of the ultimate use that they were going to, when you look at this enhancement, it says, who intended to use or dispose of the firearm unlawfully. We know that Butts wasn't a prohibited possessor. So he could have said to law enforcement, yeah, my friend, he could have right away said, yeah, my friend bought over those firearms. But no, I think the evidence suggests that he knew they were stolen. And I think the evidence also indicates that he was preparing to distribute those. And specifically, this idea that he was distributing them, I think, is made ñ is a very reasonable inference to be drawn from the exhibit. I believe it's Exhibit G, where Butts has taken a photograph of the six firearms that are lined up as if they're displaying, as if they're prepared for sale, the way a merchant would showcase his wares. Was there a sentencing hearing at which Butts testified? No, Butts did not testify. Okay. But Butts did initially lie to law enforcement officers. Where are you getting this, the fact that he indicated he didn't have any knowledge? I'm getting that both from the pre-sentence report as well as from the testimony of the officer. I think it's around JA-47. The officer says something to the effect that he initially denied knowing anything about the firearms, which is obviously untrue. Look at the pictures on his phone. And then when he was confronted with the evidence, he said he continued to distance himself, quite frankly, because he knew that this was a scheme to traffic unlawful stolen firearms. And he said, oh, well, yeah. Evans just brought them over, and then he left with them. Just one of the things that troubles me about this case is just that photo you pointed us to of the six guns. I mean, I feel like there was a time when photos of six guns might strike people as sort of, wow, why would you have six guns laying out there and take a picture? But these days, sort of in a post-Heller world, I mean, you tell people when states try to pass restrictions, like you can only buy one gun a month. Lawful gun owners, like this is an outrage. I need more than 12 guns a year. You cannot restrict me this way. And people are always posting pictures of their guns online. And so I do feel like there's been sort of a change in kind of what one can infer from a whole bunch of guns. It used to be that they were very much associated with criminal activity. It used to be that they were very much associated with criminal activity. But these days, large arsenals are held perfectly legally and very much celebrated by people on social media. And so that is part of the trouble I'm having. And I just, if you could just sort of address that, why this picture of six guns is different than some other picture of six guns, where it's an entirely lawful, like how just from the picture we can infer something of six guns, we can infer illegality and an intent to traffic illegally. Because I have to tell you, there are a lot of people posting pictures of way more than six guns on Facebook, and they are entirely lawful gun owners. I think the reason you can do that here is you need to put that picture in the context of the rest of this case. Certainly, a picture of guns all by themselves. I don't know if you can draw an inference one way or another. You pointed me to the picture of just the six guns and said they're being laid out in order to be sold and trafficked. I think that that's a fair inference when you have a convicted felon gang member who steals thousands of dollars' worth of firearms from his employers, promptly hands them over to his friend. I think it's reasonable to infer that the purpose for that is to distribute those firearms on the street. We also know, confirming the reasonableness of that inference, is that three of these firearms were, in fact, found at crime scenes. Now, I appreciate we need – oh, I apologize. I see that my time is up. But ultimately, I think that we need to not ask the district court to disregard decades of its experience and the common sense inferences that flow from this evidence as a whole. And because the standard is clear error review, I would submit that it's not implausible for the district judge to have reached the conclusion that it did. All right, thank you. Counsel, you have some rebuttal time. The question I have is, I mean, standards of review are such an important component of the rule of law. And just part of our function, I think, is to respect things like abuse of discretion and clear error, which the Supreme Court has said the purpose of those things is to allow trial judges the right and the latitude to perform what they are best at. That's the whole purpose of a standard of review. And that standard of review is met when there is not substantial evidence in the record to support the district court's finding or where the evidence is in equipoise because the government – You are assuming a conclusion. And you keep saying the evidence is in equipoise. When you look at it in its totality, the question is, was it clearly erroneous for the district court to draw the inferences that it did? And in its totality, the evidence showed nothing more than that Mr. Evans, who took these guns to Mr. Butts' house, Mr. Butts, there was no evidence of gang activity. He didn't have a felony conviction. He could lawfully possess the firearms. They were enjoying these guns. The evidence showed that they weren't distributing these guns to anyone. They were keeping them for themselves to enjoy and post pictures to social media. Where did they end up at a crime scene? I don't know. So, Your Honor, the explanation for that is – Now, you notice that they searched Mr. Evans' home. They searched his car. They didn't find the guns. They never searched Mr. Butts' home. So what most likely happened was as soon as Mr. Butts learned that the police were investigating these guns and learned for the first time that he was implicated in possessing stolen weapons, he did what most people do, dump them in the nearest dumpster, got rid of them. But that doesn't mean that they had any intention when Mr. Evans left those guns with Mr. Butts that they wanted to get rid of them. On the contrary, they were enjoying having these guns. But let me just stop you there. I mean, that may be an explanation, I suppose. But, I mean, when the record shows that they ended up at crime scenes, that seems that someone could look at that and suggest maybe your explanation is not the only one there. And the court in the Third Circuit and Cicerello in the Eleventh Circuit in Askew both rejected that exact argument and said that that is not where the guns ended up, is not probative of the person's intent at the time of the transfer of the firearms. It's not just that. You can't take a view of the evidence which is essentially divide and conquer. You've got to take the evidence here as a whole. Absolutely. And the evidence as a whole showed that Mr. Evans was using these guns for himself, that he was posting pictures to social media, that he was enjoying these weapons. He had no intention of furthering them. And I'm just pointing out, Your Honor. I mean, I can see how the district court would say, you've got to be kidding. And maybe the district court didn't have to react that way, but I can see when the proposition is put to the trial court that we are just enjoying a nice little party here or a nice little celebration of my theft and everything. The district court could say, come on, I wasn't born yesterday. You've got to be kidding me. Your Honor. And I can't say that that reaction is clearly erroneous. To me, the whole doggone thing hinges on the standard of review and the importance of respecting it. And, Your Honor, may I just answer with the last quote from Mr. Sorella? Yes, you may. I would point the court to this language. The preponderance of the evidence is not a high standard of proof. It is not, however, a toothless standard, and a district court may not abdicate its responsibility to ensure that the prosecution meets the standard before adding months or years onto a defendant's prison sentence. Mr. Evans has been, he pled guilty to possessing these stolen firearms. He pled guilty to stealing the firearms. He pled guilty and is being punished for possessing the firearms as a felon. If the government wanted an additional four-level, or actually eight-level enhancement, which exposed Mr. Evans to years and years of additional incarceration, they needed to come forward with evidence to prove it, and they did not in this case. For a reason. Thank you, Your Honors. Thank you. We'll come down and re-counsel and then move to our next case.
judges: J. Harvie Wilkinson III, Pamela A. Harris, A. Marvin Quattlebaum Jr.